IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**DESTIN ALLEN LEWIS**                                                                 **PLAINTIFF**

V.                              CASE NO. 5:17-cv-05099

**SHERIFF HOLLOWAY, Benton County,
Arkansas; LIEUTENANT R. HOLT; JOHN
OR JANE DOE DIETICIAN; MEDICAL
DEPARTMENT FOR THE BENTON
COUNTY DETENTION CENTER; DEPUTY
KINSINGER; DEPUTY TRIMMEL;
KEEFE COMMISSARY NETWORK, L.L.C.
and NURSE CARLOS**                                                                  **DEFENDANTS**

## OPINION AND ORDER

This is a civil rights case filed by the Plaintiff Destin Allen Lewis under the provisions of 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and has filed an application to proceed *in forma pauperis* ("IFP"). He is incarcerated in the Arkansas Department of Correction, Ouachita River Unit. At all times relevant to this complaint, Plaintiff was incarcerated in the Benton County Detention Center ("BCDC").

The Prison Litigation Reform Act ("PLRA") modified the IFP statute, 28 U.S.C. § 1915, to require the Court to screen complaints for dismissal under § 1915(e)(2)(B). The Court must dismiss a complaint, or any portion of it, if it contains claims that: (a) are frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

-1-

## I. BACKGROUND

According to the allegations of the Complaint (Doc. 1), Plaintiff believes his constitutional rights were violated in the following ways: (1) when there were inmates in the pod that had not been tested for tuberculosis, had communicable diseases, had a staph infection, or suffered from mental illness; (2) when it took Nurse Carlos over forty-eight hours to segregate the inmate with staph infection; (3) unsanitary conditions when twenty-five to thirty inmates are required to use the same toilet and sink (referred to as the public restroom) when inmates were locked out of their cells; (4) when inmates fear retribution because they are forced to break detention center rules by crossing a red line to access the public restroom causing Plaintiff to attempt to hold his urine and excrement for hours at a time; (5) when Plaintiff suffered dehydration as a result of refusing to drink from the wash basin in the public restroom which he contends was extremely unsanitary with blood, spit, etc. on it; (6) when Plaintiff was denied access to a law library, causing him not to be able to file an appeal or post-conviction motions including one for a reduced sentence; (7) when inmates are locked out of their cells for ten or more hours each day, forced to walk on concrete, or sit on metal stools; (8) when inmates have to do without toilet paper for up to five hours at a time, occurring most often when Deputy Kinsinger is on duty; (9) after May 10, 2017, when inmates were not allowed to shave or cut their hair; (10) prior to May 10, 2017, when there was a failure to properly sanitize the electric clippers between uses, and Deputy Kinsinger refused to provide the plastic guard with the clippers; (11) when inmates were charged $20 to see the nurse whether or not she provides assistance or treatment; (12) when proper disinfectant spray or cleaning supplies was not received on

numerous days; (13) when Plaintiff was awakened from a deep sleep by Deputy Trimmel demanding Plaintiff's sheets and blankets for the laundry when the lights were still off in the pod;(14) when inmates did not receive fruit for breakfast as indicated on the posted menu and received fortified fruit drink at other meals instead, when inmates did not receive the proper number of calories—causing inmates to "starve" and Plaintiff to suffer from afflictions due to a lack of vitamins and nutrients—or when inmates were served cold meals; (15) when inmates were charged $1.50 a week, plus tax, for indigent packs; and (16) when inmates were subjected to price gouging by Keefe Commissary charging 200% to 400% more than retail prices.

As relief, Plaintiff seeks compensatory and punitive damages. He also asks that every inmate in E-pod be given blood tests. Finally, he asks that he be given a complete physical and that his blood work be screened.

## II. DISCUSSION

Under the PLRA, the Court is obligated to screen a case prior to service of process being issued. A claim is frivolous when it "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, the Court bears in mind that when "evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Several of Plaintiff's claims are subject to dismissal. Plaintiff's claims about the alleged unsanitary conditions in connection with the use of the "public restroom" are subject to dismissal. As a preliminary matter, Plaintiff has not stated how any of the Defendants were personally responsible for these conditions. "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993) (section 1983 liability requires some personal involvement or responsibility).

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII; *see also Wilson v. Seiter*, 501 U.S. 294 (1991); *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) ("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same"). "[P]unishment is cruel and unusual if it deprives inmates of the minimal civilized measure of life's necessities." *Whitnack v. Douglas County*, 16 F.3d 954, 957 (8th Cir. 1994)(internal quotation marks and citation omitted).

Jail or prison officials must provide reasonably adequate ventilation, sanitation, bedding, hygienic materials, food, and utilities. Prison condition claims include threats to an inmate's health and safety. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008)(citation omitted). To state an Eighth Amendment claim, the plaintiff must allege that prison officials

acted with "deliberate indifference" towards conditions at the prison that created a substantial risk of serious harm. *Farmer*, 511 U.S. at 834.

Plaintiff does not allege that he was unable to use the toilet when he needed to. He does not allege his hygiene suffered as a result or that he contracted any disease. While he does allege there were times he held his urine or excrement until he was able to get back in his cell, this was by choice, based on his belief the "public restroom" was unsanitary. Plaintiff does allege one inmate had staph infection and remained in the pod for over forty-eight hours before he was segregated, but he does not allege the infection was connected in any way to the use of the public restroom during lock out periods. Certainly, there is nothing in the Complaint suggesting that the Plaintiff was deprived of a single identifiable human need. No claim is stated.

Similarly, no claim of constitutional dimension is stated by Plaintiff's allegation that inmates must cross a red line to reach the designated public restroom, and that he fears retribution if he crosses that line. Importantly, Plaintiff does not allege that he or any other inmate has been disciplined for crossing the red line to use the designated restroom.

Next, no claim of constitutional dimension is stated concerning Plaintiff's alleged dehydration that resulted from him choosing not to drink from the wash basin in the public restroom. There is no need for Plaintiff to touch the sink with his mouth in order to obtain a drink. To the extent he becomes dehydrated during lock out periods, it is caused by his own conduct. Running drinkable water is available to him.

Plaintiff also objects to inmates being locked out of their cells during the day, forced to walk on concrete, and sit on metal stools. Additionally, he objects to not being allowed

to have cups in the day room. He does not allege how these rules violate his constitutional rights. As the Eighth Circuit has stated:

> we wish to emphasize our frequently expressed view that the federal courts, whether in habeas corpus or in section 1983 contexts, should not be unduly hospitable forums for the complaints of either State or federal convicts; it is not the function of the courts to run the prisons, or to undertake to supervise the day-to-day treatment and disciplining of individual inmates; much must be left to the discretion and good faith of prison administrators. That is not to say, of course, that the federal courts should not exercise their jurisdiction in proper cases, but the exercise of it should be sparing.

*Sawyer v. Sigler*, 445 F.2d 818, 819 (8th Cir. 1971); *see also Cole v. Benson*, 760 F.2d 226, 227 (8th Cir. 1985)("[I]t is not the function of this court to interfere in the day-to-day running" of detention facilities). While Plaintiff may object to these rules, he does not allege that the rules deprived him of a single identifiable human need or in any other way infringed on his constitutional rights. No claim of constitutional dimension is stated by Plaintiff's disagreement with these rules.

Plaintiff further alleges that inmates at times went without toilet paper for up to five hours, most often when Deputy Kinsinger was on duty. Plaintiff has at best alleged negligence on the part of Deputy Kinsinger and other unnamed deputies; but in any event, a five-hour period of being without toilet paper does not rise to the level of an unconstitutional condition of confinement. *See Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988)(inadvertent failure to replenish inmate's toilet paper supply for several days does not evidence mental state required to demonstrate Eighth Amendment violation); *Citro v. Zeek*, 544 F. Supp. 829 (W.D.N.Y. 1982)(failure to provide additional rolls of toilet paper insufficient to state a claim); *see also Johnson v. Henson*, Civil No. 15-cv-02628, 2016 WL 915823, *4 (March 10, 2016, D. Colo.)(Plaintiff's "allegations that she was forced to stay

in segregation unit in handcuffs for four hours without toilet paper is not sufficiently serious to implicate the Eighth Amendment"); *Smith v. Kruper*, Civil No. 3:07-cv-0287, 2007 WL 2710477 (Sept. 13, 2007, N.D. Ind.)("Being without a mattress, toilet paper, and his personal property for seven hours during the day, however, is not a sufficiently serious injury as to deprive the prisoner of the minimal civilized measure of life's necessities").

Similarly, Plaintiff's allegations that he was not allowed to shave or get his hair cut after May 10, 2017, are insufficient to state a claim of constitutional dimension. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim. [O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMilliam*, 503 U.S. 1, 9 (1992). Plaintiff has not alleged that he suffered any physical injury or adverse health consequence as a result of not being allowed to shave or cut his hair. His allegations are insufficient to state a claim.

As for his claim that the hair clippers provided by the jail did not always have the plastic guard on them and were not sanitized between uses, Plaintiff does not allege that he suffered any physical injury or that his health suffered in any way as a result of the use of the hair clippers. The claim is therefore insufficient to state an Eighth Amendment violation.

Next, Plaintiff alleges that there were numerous days when he was not given "proper" disinfectant spray or that cleaning supplies were not received. However, he makes no allegation that this practice occurred over consecutive days, that he was unable to keep his cell clean, or that he suffered any health consequence as a result. Plaintiff fails

to state any facts in his Complaint that would connect the denial of cleaning supplies to any of the named Defendants or allege the existence of a policy of providing inadequate cleaning supplies. Moreover, merely being denied cleaning supplies on certain days does not state a claim sufficient to implicate the Eighth Amendment.

Likewise, being woken out of a deep sleep and asked for his bedding by Deputy Trimmel on one occasion is not sufficiently serious to deny Plaintiff the minimal civilized measure of life's necessities. No constitutional claim is stated.

As for Plaintiff's claim that he was charged for medical care, this is also is subject to dismissal. It is constitutionally permissible for a detention center to charge a detainee the cost of medical care. See City of Revere v. Mass. General Hosp., 463 U.S. 239, 245 (1983)("as long as the governmental entity ensures that the medical care needed is in fact provided, the Constitution does not dictate how the cost of that care should be allocated as between the entity and the provider of the care. That is a matter of state law."). Thus, while jails must provide basic medical care to inmates, there is no requirement that the jails provide the medical care free of cost. See e.g., Reynolds v. Wagner, 128 F.3d 166, 173-74 (3rd Cir. 1997)(deliberate-indifference standard does not guarantee prisoners right to be entirely free from cost considerations that figure in medical-care decisions made by most non-prisoners in society).

With respect to being charged $1.50 plus tax per week for "indigent pack" supplies, Plaintiff makes no allegation that he was ever deprived of hygiene products. In fact, he maintains that he received the supplies, and that if he had no funds available in his account, his account would merely reflect an negative balance. He does not allege that

he was unable to maintain reasonably adequate hygiene. Clearly, he suffered no objectively serious deprivation due to this practice.

Finally, the Court finds that no constitutional claim is stated by Plaintiff's allegation that he was charged more for items purchased at the commissary than it would have otherwise cost him to obtain the items in the free world. Even if Plaintiff were charged exorbitant amounts for commissary items, no constitutional claim would be stated. *See Register v. Helder*, et al., 2015 WL 6123071 (W.D. Ark. July 30, 2015); *Pagan v. Westchester Cnty.*, 2014 WL 982876, at *17 (S.D.N.Y. March 12, 2014) (even if Aramark engages in price gouging, no constitutional claim is stated); *Montgomery v. Mancusco*, 2013 WL 4590436 (W.D. La. Aug. 23, 2013) ("The law is clear that inmates have no constitutionally protected interest in purchasing goods through the prison commissary at the cheapest price possible"); *McKnight v. Taylor*, 2012 WL 5880331 (D.N.J. Nov. 20, 2012) ("Prisoners have no federal constitutional right to purchase items from the jail commissary at any particular price, or to restrain the vendor from charging exorbitant prices.").

### III. CONCLUSION

The following claims are not cognizable under § 1983 and are frivolous: (1) the alleged unsanitary conditions caused by multiple inmates being required to use a single toilet and wash basin; (2) the fear of retribution for crossing the red line to reach the toilet and wash basin designated for use; (3) Plaintiff allegedly suffering from dehydration during lock out periods; (4) being locked out of the cell during the day; (5) doing without toilet paper for up to five hours; (6) not being allowed to shave or cut his hair; (7) the guard for

the hair clippers not always being provided and the clippers not being sanitized between uses; (8) being charged to see the nurse; (9) numerous days when disinfectant and cleaning supplies were not provided; (10) being woken from a deep sleep by Deputy Trimmel; (11) being charged for indigent supplies; and (12) alleged price gouging by Keefe Commissary. Therefore, these claims are **DISMISSED WITH PREJUDICE**. See 28 U.S.C. § 1915(e)(2)(B)(i)-(ii) (IFP action may be dismissed at any time due to frivolousness or for failure to state a claim). This dismisses all claims against Deputy Kinsinger, Deputy Trimmel, and Keefe Commissary. The Clerk is directed to terminate them as Defendants.

This leaves for later consideration the following claims: (1) inmates not being tested for tuberculosis, being housed with inmates with communicable diseases, and being housed with mentally ill inmates; (2) Nurse Carlos failing for forty-eight hours to isolate an inmate with staph infection; (3) being denied access to a law library causing Plaintiff not to be able to file his appeal or requests for post-conviction relief; and (4) not receiving fruit, meals being calorically deficient causing inmates to "starve," and Plaintiff possibly suffering from an affliction due to lack of vitamins and nutrients.

**IT IS SO ORDERED** on this 11th day of August, 2017.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE